THE PEOPLE *ex rel.* MONTAGUE WARD *against* THOMAS B. ASTEN *et al.*[*]

(Decided March 12th, 1875.)

An act of the Legislature (L. 1867, c. 697, § 3) provided that all damage arising from the closing of a street in the city of New York, under the proceedings authorized by that act, should be ascertained and paid *in the manner* specified in the act of 1852 (L. 1852, c. 52, §§ 3, 4), by which the duty of estimating and assessing the damage arising from the closing of streets in certain cases was imposed on the assessors appointed to estimate and assess the expense of conforming to the change of grade, &c.: *Held*, That the act of 1867 must be construed to mean that the damages were to be ascertained by the persons appointed to estimate the expense of a change of grade, and that if there were no persons known by that name when the act of 1867 was passed, then it must be construed to mean the official persons who had succeeded to and who performed that duty, by whatever name they were known.

*Held*, further, that the board of assessors created by the act of 1859 (L. 1859, c. 302), under the power conferred on them by said act (§ 15), to "make estimates and assessments as required by law, for * * * * and all other improvements directed by corporation ordinances, for which an assessment is to be made," were the proper officers to make the estimate and assessment contemplated by the act of 1867.

APPEAL from an order of this court made at special term by JOSEPH F. DALY, J., directing a writ of peremptory mandamus to issue, directed to Thomas B. Asten and others, as and composing the board of assessors of the city of New York, commanding them forthwith to meet as a board of assessors, and to estimate the damage done to the relator and his property, by reason of the closing of the Bloomingdale road in the city of

---

[*] Affirmed by the Court of Appeals " on opinion of court below," in 62 N. Y. 623, 624.

New York, and also commanding them to apportion and assess for benefit upon such premises or lands as were or might have been benefited by the closing of said Bloomingdale road, the sum or sums allowed and estimated to the relator as damage.

The affidavits of the relator on which the mandamus was granted, showed that he was the owner in fee of land on the southeast corner of the Bloomingdale road (then closed) and Manhattan street, in the city of New York, and that the Bloomingdale road had been laid out as a road or public highway, pursuant to an act in relation to the laying out of public highways in the county of New York, passed June 19th, A. D. 1703, and and that it was continued and kept as a public highway and road of the city of New York, up to and including the year 1867.

That by certain proceedings taken by the Board of Commissioners of Central Park, under the provisions of L. 1867, c. 697 (passed April 24th, 1867), the portion of Bloomingdale road in front of deponent's land, and between Manhattan street and 120th street was closed.

This act of 1867, provided, among other things, in its third section:

" * * * All damage to any land, or to any building or structure thereon existing at the time of the passage of this act, or on any street, avenue or road laid out on the map of the city of New York, within the district specified in the first section of this act, by reason of closing such street or altering the grade thereof, shall be ascertained and paid in the manner specified in sections three and four of an act entitled ' An act to make permanent the grades of the streets and avenues of the city of New York, passed March 4, 1852.' "

The sections of the act of 1852, referred to read as follows :

"§ 3. In all cases where the grade of any street or avenue now established south of Sixty-third street, or which shall hereafter be established north of said Sixty-second street, shall be changed or altered in whole or in part, it shall be the duty of the assessors appointed to estimate and assess the expense of conforming to such change of grade, and regulating the street or avenue in accordance therewith, to estimate the loss and

damage which each owner of land fronting on such street or
avenue will sustain by reason of such change to such lands, or
to any improvements thereon, and make a just and equitable
award of the amount of such loss or damage to the owner or
owners of such lands or tenements fronting on such street or
avenue and opposite thereto, and affected by such change of
grade, and the amount of such award shall be included in the
expense of such proceeding, and with such expenses shall be
assessed, as provided in and by the one hundred and seventy-
fifth section of the act of April ninth, 1813, entitled ' An act to
reduce several laws relating particularly to .the city of New
York, into one act.' "

" § 4. The mayor, aldermen and commonalty of the city of
New York, shall, within four months after the ratification of
the assessment of the assessors, pay to the respective parties en-
titled thereunto, the amount of such awards in their favor re-
spectively ; and in case of their neglect or default to pay the
same after demand made therefor, it shall be lawful for the per-
son or persons entitled to the same to sue for and recover the
the amount of said awards, etc. * * * "

The appellants were a board of assessors organized under
L. 1859, c. 302, by § 15 of which their duties were defined as
follows : To make " estimates and assessments, as required by
law, for building walls and erecting pumps ; pitching, paving,
regulating and repairing streets ; constructing sewers ; fencing
vacant lots and public slips ; and all other improvements
directed by corporation ordinance, for which an assessment is
to be made."

No affidavits were presented on the part of the appellants
here, and a peremptory mandamus was granted as above stated.

*William Barnes*, for appellants.

*James A. Deering*, for respondent.

DALY, Chief Justice.—The act of 1867 declares that all dam-
age to any land or building by reason of the closing of any street

referred to in the act, shall be ascertained and paid in the manner specified in the third and fourth sections of the act of 1852.

These sections in the act of 1852, do not provide for ascertaining and paying any damage from the closing of a street; but for such as may arise thereafter from altering or changing, in whole or in part, the grade of any street. What is referred to indirectly, therefore, in the act of 1867, is the mode of ascertaining and paying damage in the act of 1852, which was by estimating the loss or damage of each owner of land, by the persons appointed to estimate the expense of the change of grade; and to ascertain who those persons were, when the act of 1852 was passed, and who they were when this act of 1867 was passed, it will be necessary to review the state of the statutory law upon this subject, when the act of 1852 was passed, and the changes made in it afterwards, down to the time of the passage of the act of 1867.

By the Dongan and Montgomerie charters, the corporation had the power to direct the " laying out of streets," and also the power of " altering, amending or repairing " streets; words comprehensive enough to include a change or alteration in the grade (Kent's Charter, pp. 15, 100, 235, 237). By the act of 1787, c. 88, this power was further recognized, and the common council were authorized to appoint two persons to be the surveyors of buildings, streets, wharfs, &c., and to see that they were laid out, altered, &c., so as to be regulated with uniformity, according to the ordinances of the corporation, and the corporation were authorized to take the ground of any private person for such purposes, whose damage was to be assessed by a jury. By the act of 1801, c. 129, the corporation were further empowered to make by-laws, or orders for " regulating and altering " the streets, as well as other matters, and to appoint five freeholders to estimate the expense, and make a just and equitable assessment of it upon the owners or occupants of houses benefited; and by the act of 1813, § 175, the assessment for " the altering or amending " of streets, instead of being made by five freeholders, was to be made by such skillful, competent and disinterested persons as the common council might think proper to appoint. Under this latter authority, the common council

generally appointed three persons, and by the ordinance of 1839, c, 5, title 7, the street commissioner the assistant street commissioner, and the first clerk in the street commissioner's office, were required to perform the duties of assessors, in estimating, among other matters therein specified, the expense of repairing streets, and as such assessors, were required to take an oath that they would make the estimate and the assessment fairly and impartially. After the adoption of the amended charter of 1849, § 12, a bureau of assessment was created in the street department, the regulation of streets being committed, first by the ordinance of 1839, c. 6, and afterwards by the amended charter of 1849, to the "street department." After 1849, and before the enactment of the statute of 1852, officers of the bureau of assessment were known by the name of "the assessors of the street department," and are referred to by that name in the statutes of 1851, c. 430, and 1853, c. 508, who were authorized, and who did both make and collect the assessments connected with the regulation of streets. When the act of 1852, therefore, refers to the assessors appointed to estimate and assess the expense of conforming to any change of grade that might thereafter be established, it means the officers now referred to, and then known by the statutory designation of "the assessors of the street department."

The act of 1852 restricted the common council from making any change of grade south of 63d street, except with the written consent of at least two-thirds of the owners of the land, and it required what had never been required before, except where a change of grade had become necessary by the opening of a street, that an estimate should be made of the loss and damage sustained by each owner of the land fronting on the street the grade of which was to be changed; which additional duty, it imposed upon the assessors, who were to estimate the expense of the improvements, by requiring them to make a just and equitable award of the amount of the damage to each owner.

By the act of 1816, c. 160, provision was made for ascertaining the damages sustained by the owners of land where a new regulation in the elevation or depression of a street had

become necessary in consequence of the opening and improvement of a street in the compactly built part of the city; under which act the damages were to be ascertained by "the commissioners of estimate and assessment," appointed by the Supreme Court under the act of 1813, § 176, for the opening and laying out of any street, avenue, square or public place in the city. It is very clear that these are not the persons referred to in the act of 1852, for they were not known by the name of "assessors," but by that of "commissioners," the name by which they are still designated, and they assessed damages for a change of grade only in the case where it became necessary in consequence of the opening of a street.

By the act of 1818, c. 213, provision was made for ascertaining and paying the damages to the owners of land caused by the closing of streets, which is to be ascertained by "three commissioners of estimate," to be appointed by the Supreme Court. It is equally evident that they are not the persons referred to, for they are not denominated "assessors," but "commissioners of estimate," and they could not have been intended by the act of 1867, for the act does not refer to the act under which they were appointed; but declares that the damages shall be ascertained and paid in the manner specified in the third and fourth sections of the act of 1852, and these sections, as I have said, specify the *assessors* appointed to estimate and assess the expense of conforming to a change of grade.

This was the state of the statutory law when the act of 1852 was passed. At that time, by the amended charter of 1849, § 12, there was an executive department called the street department, which, by the provision of the amended charter, had cognizance of "the opening, regulating and paving streets," "when done by assessment;" terms which embrace any change or alteration in the grade, and the bureau for the collection of assessments attached by that amended charter to the street department, made the assessment lists, as appears by the acts of 1851 and 1853 before referred to, for in the act of 1853, c. 508, § 2, a specified compensation is given to them "for their services in making such assessment," "on the confirmation of the assessment list," and this state of things lasted until the

passage of the act of 1859, c. 302, § 15, which created a
"board of assessors," to be appointed by the commissioners of
taxes and assessments, which board was thereafter charged with
the duty of making the estimates and assessments required by
law for building walls, erecting pumps, pitching, paving, *regu-
lating* and *repairing* streets, fencing vacant lots and public
slips, and *all other improvements* directed by a corporation
ordinance, for which an assessment may be made ; and all pre-
vious statutes inconsistent with the act were repealed. This
repealed so much of the act of 1813, c. 86, as authorized the
common council to appoint persons to estimate and assess the
expense for regulating or altering any street, or the pitching or
paving of it, or any of the improvements provided for by the
175th section of that act ; the board of assessors being there-
after substituted for the persons who were up to that time
either appointed by the common council or by the ordinance of
1839, or existed as a bureau in the street department under the
act of 1849. This board of assessors, under the act of 1859,
are, in addition to what are enumerated, to assess "*all other im-
provements* directed by a corporation ordinance." A change in
the grade of a street is an improvement within the meaning of
these words, and an improvement which can be directed to be
made by a corporation ordinance, so that they have in this re-
spect the same power which the assessors formerly had who
were appointed by the common council, or who acted as a
bureau of the street department.

That the officers designated in the act of 1851 as "the as-
sessors of the street department" did make the assessments for
a change of grade, or for any alteration in the regulation of a
street, I infer not only from the provision in the act of 1853,
giving them compensation for their services in making assess-
ments, but from the fact that these officials attached to the street
department, the street commissioner, his assistant and the first
clerk in the department, were required by the ordinance of 1839,
before referred to, to perform the duties of assessors in making,
among other things, the *estimates* for the expense of repairing
streets when done by the order of the common council, and to
make the *assessment* for such expense among the owners or

occupants of houses to be benefited thereby, which, by the ordinance, they were to do without charge, but for which they were compensated by the acts of 1851 and 1853 before referred to. I infer that they continued in the exercise of this duty down to the passage of the act of 1859, creating the board of assessors, as I find nothing showing that the ordinance of 1839 was repealed until the revision of the ordinance, in May, 1859, one month after the passage of the act of 1859, in which revised ordinance this provision of the ordinance of 1839 was omitted, for the reason that the act of 1859 had created a new body, the board of assessors, who were thereafter to make all the estimates and assessments for improvements directed by a corporation ordinance.

The Legislature, when they passed the act of 1867, must be assumed to have known all the prior legislation, and the state of the statutory laws relating to streets in the city of New York as it existed when this act of 1867 was passed ; that is, they must be assumed to have known that under the act of 1813 there were assessors for ascertaining the expense of such improvements, directed by the corporation, as the regulation or altering of streets ; commissioners for ascertaining the damage to land owners by elevating or depressing the grade of a street, in consequence of the opening of a new street, and that they were the commissioners appointed by the Supreme Court for the opening of the street ; that when a street was closed the damages to land owners were ascertained by commissioners of estimate appointed by the Supreme Court ; that under the amended charter of 1849, a bureau for the collection of assessments was created ; that by the act of 1851, an organization was recognized as existing in the street department, known as " the assessors of the street department ; " that the street department had, under the amended charter of 1857, ch. 187, cognizance of the " altering, grading and regulating " of streets, and that, by the act of 1859, the board of assessors, which was then created, succeeded to all the powers in respect to assessments for altering, grading and regulating of streets under corporation ordinances, which the assessors appointed by the common council had under the act of 1813, or the assessors of the street department under the amended charters of 1849 or 1857.

There are certain maxims in the interpretation of statutes to be applied to this case, which I will briefly enumerate: 1. That statutes are to be interpreted according to the *intent*, and not necessarily according to the letter. 2. That where the words are obscure, so that the intent does not clearly appear, it may be inferred from the cause or necessity of the statute. 3. That it is the duty of courts to construe a statute so as to meet the mischief and advance the remedy. 4. That where the provision of a statute is general, everything which is necessary to make the provision effectual is supplied by the common law. 5. That all statutes in *pari materia* are to be read and construed together, as if they formed parts of the same statute, and were enacted at the same time. 6. That where the intent, or the mischief intended to be remedied, is plain, but the remedy from the words used is somewhat obscure, that construction is to be given, if it be possible, which will give full effect to the intent, and not that which will render it void and inoperative (Potter's Dwarris on Stat. and authorities cited, p. v).

The intent of the act of 1867 is very plain. It is that the damage to any land, building or structure, by reason of the closing of a street, or the altering the grade of a street, within the district specified, shall be ascertained and paid. The manner in which it is to be ascertained and paid is the only thing in respect to which there can be any doubt. It is to be in the manner specified in the 3d and 4th sections of the act of 1852, that the damages are to be ascertained by the assessors appointed to estimate the expense of a change of grade, and if there were no persons known by that name when the act of 1867 was passed, then it must mean the official persons who have succeeded to and who then performed that duty, by whatever name they were known. If there were such officials when this act of 1867 was passed, then there is no difficulty in giving effect to and carrying out the intent of the act. The board of assessors created in 1859 have authority to estimate the expense of improvements ordered by the corporation, other than those specifically enumerated in the act creating that board and defining its powers. A change in the grade of a street is not among the matters specifically enumerated, but it is embraced by the lan-

People ex rel. Ward v. Asten.

guage at the close of the section, "and all other improvements directed by corporation ordinance for which an assessment may be made." Upon this point I have not the slightest doubt. It is not only within the power, but it is the duty of the board to estimate and assess the expense if a change in the grade of a street is directed by the corporation in a part of the city where they have the power to do so. This being the case, the board of assessors is the body to ascertain the damages arising from the closing of a street or the changing of the grade of one, in pursuance of the authority conferred by the act of 1867, within the district specified in that act, and they are to do it in the manner required by the act of 1852, by making a just and equitable award of the amount of the loss and damage to the owners of the land upon the street heretofore known as the Bloomingdale road, which has been closed under the act of 1867.

It is objected to this mandamus that they are required to ascertain the plaintiff's loss and damage; and that, under all the acts, there is to be but one general proceeding in which the loss and damage of each person is to be ascertained. Let them, then, go on and do this; and when they have done so, the specific amount to be awarded to the plaintiff will be ascertained. I apprehend that this has not been the difficulty, but that it has been their doubt as to their authority, in respect to which they very properly applied to the corporation counsel, and that officer, instead of giving any opinion as to how the positive provision of the statute, that the damage to the land owner from the closing of the street is to be ascertained and paid, was to be complied with, told the board of assessors that he had no doubt that that was the intent of the act; but that he doubted whether the object had been accomplished by the enactment, and in view of the doubt he entertained as to the jurisdiction, that he could not advise them to act.

He has set forth, in his opinion, the grounds upon which this doubt was founded; and, in my judgment, it has no bearing whatever upon the question. It is substantially this, that the expense of the survey and of the maps, by the filing of which the street is closed, is not paid by assessment, but by

money to be ultimately raised by taxation; whereas, under the act of 1852, the assessors who, under the act of 1813, are to estimate the expenses of a change of grade, are, in addition to that, to estimate the loss and damage of owners affected by the change of grade, to make a just and equitable award to each of such owners; that the amount so awarded is to be included in the expense of such proceeding; that an assessment of such expense, including the amount awarded for loss and damage, is to be assessed upon the owners or occupants of houses and lots intended to be benefited by the improvement; and that four months after the ratification of such assessment by the common council, the amount awarded to such owners is to be paid by the corporation (Laws of 1813, c. 86, § 175; of 1852, c. 52, §§ 3, 4; of 1867, c. 697, § 3). That as there is no occasion for assessors, nor is there any assessment, under the act of 1867, for the expense incurred by the commissioners of the Central Park, in making surveys and the preparation of maps, there is not, in the language of the act of 1852, assessors appointed to estimate and assess the expense; and therefore the doubt whether the provision for ascertaining and paying the loss and damage to owners, by the closing of the street, is not ineffectual, inoperative, and void. I utterly fail to see the sequence in this reasoning. It by no means follows that this provision in the act of 1867 cannot be carried out because there is to be no assessment upon the owners of land benefited, for the expense incurred by the commissioners of the Central Park, in having surveys made and maps prepared and filed to enable them to close the street. This provision is itself an assessment. An assessment, in its general signification, is to ascertain, settle, and fix an amount to which a party is subject, as his proportional part in a tax, or which he is to pay as damages; and where the corporation are, by statute, to pay any part of the value of buildings taken for public improvement, it is in respect to them called, in the statute, an assessment (Laws of 1813, c. 86, § 178; Laws of 1818, c. 213, § 10). This provision contemplates that damage will or may accrue to land, or the buildings or structures upon it, by the closing of the street, and that it is to be ascertained and paid. When it declares that it shall be ascertained and paid in the

manner specified in the act of 1852, it means that it shall be estimated as the loss and damage to the owners of land fronting upon a street is estimated, under the act of 1852. When a change is made in the grade of a street, that is by making a just and equitable award of the amount of loss and damage which each owner of land fronting on the street will sustain by reason of the change. That it is to be made by the officials who, when the act of 1867 was passed, had succeeded to and exercised the same powers as the officials referred to in the act of 1852. That it is and was to be an assessment fixing the amount to be awarded to each owner who will sustain loss and injury by the change. That as such assessment, it is to be certified to the board of revision and correction, by the act of 1861, c. 308, which, in this respect, has succeeded to the powers of the common council, and when ratified by them, is binding and conclusive; and that four months after the ratification, the amounts of the respective awards are to be paid by the corporation (Laws of 1852, c. 697, §§ 3, 4; of 1813, c. 86, § 175). In this way, in my judgment, the act can be fully carried out without doing violence to, setting at naught, or in any way impairing any statutory provision existing when the act of 1867 was passed. The order appealed from should be affirmed.

LOEW and LARREMORE, JJ., concurred.

Order affirmed.